UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HANNAH MOODY                                                                PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:19-CV-537-DPJ-FKB

WALMART, INC., ET AL.                                                      DEFENDANTS

ORDER

This premises-liability case is before the Court to address pre-trial evidentiary issues.

Specifically, Defendants Walmart, Inc., and Wal-Mart Stores East, LP (collectively "Walmart"),

have moved to exclude expert testimony and have moved in limine to exclude other evidence.

*See* Def.'s Mots. [151, 185].  Plaintiff Hannah Moody has also filed a motion in limine.  *See* Pl.'s

Mot. [187].  The remaining portion of the expert motion is granted.  Both motions in limine are

granted in part but otherwise denied.

I.       Background

Moody claims that she was injured on September 3, 2016, when boxes being pulled

through a Walmart on a pallet allegedly fell on her.  This Order is written for the parties' benefit

and for the record.  The Court incorporates its October 27, 2021 Order [183] for a broader

discussion of the facts.

II.      Motions in Limine

As summarized by the Fifth Circuit Court of Appeals:

A motion in limine is a motion made prior to trial for the purpose of prohibiting
opposing counsel from mentioning the existence of, alluding to, or offering
evidence on matters so highly prejudicial to the moving party that a timely motion
to strike or an instruction by the court to the jury to disregard the offending matter
cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir.1977) (citation and quotation marks omitted).  As with all in limine orders, the non-prevailing party may revisit the issue at trial, but it must do so outside the jury's presence.  *See Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *4 (S.D. Miss. Apr. 2, 2012).

        A.        Walmart's Motion in Limine

Walmart seeks to exclude four categories of evidence:  (1) incidents at other Walmart stores; (2) lost wages; (3) other suits/settlements involving Walmart; and (4) Walmart's financial condition.  Moody challenges only the first; Walmart's motion is granted as to the other three.

The parties dispute whether Moody may offer evidence of four prior incidents where customers were allegedly struck by falling items.  "In order for such evidence to be admissible[,] the party offering same bears the burden of demonstrating that 'the accidents involved substantially similar circumstances.'"  *Reddin v. Robinson Prop. Grp. Ltd. P'ship*, 239 F.3d 756, 760 (5th Cir. 2001) (quoting *Rodriguez v. Crown Equip. Corp.*, 923 F.2d 416, 418 (5th Cir. 1991)).  Before comparing the facts of the other incidents to Moody's claim, Walmart makes four general arguments that must be addressed.

First, Walmart argues that none of the incidents are substantially similar because they happened at other stores.  Def.'s Mem. [201] at 2.  Walmart relies primarily on *O'Bryant v. Walgreen Co.*, where a Fifth Circuit panel concluded that Mississippi law allows "evidence of similar incidents but, *at the same location as the site in question*."  802 F. App'x 826, 832 (5th Cir. 2020) (citing *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166–67 (Miss. 2011); *Corley v.*

*Evans*, 835 So. 2d 30, 37–38 (Miss. 2003); *Yoste v. Wal-Mart Stores, Inc.*, 822 So. 2d 935, 936 (Miss. 2002)).[1]

As Moody points out, *O'Bryant* is unpublished and, therefore, non-binding. Moody also notes that the Mississippi Supreme Court has affirmed a jury verdict where there was testimony regarding similar design elements at other locations of a large chain store. *See Cheeks v. AutoZone, Inc.*, 154 So. 3d 817, 821, 824 (Miss. 2014). As a result, that court necessarily considered the information from other locations to be probative. Finally, the cases cited in *O'Bryant* arose from distinguishable contexts. *Double Quick, Inc.* and *Corley* were both cases involving premises liability for third-party acts, where the notice issues are different. *See Double Quick, Inc.*, 73 So. 3d at 1167; *Corely*, 835 So. 2d at 39. And *Yoste* examined whether the property owner knew there was a specific dangerous condition in its parking lot, something that defects at other locations could not address. 822 So. 2d at 936. On this authority, the Court is not willing to say similar accidents at a defendant's other locations can never be relevant in a premises-liability case.

Second, Walmart asserts that none of the other incidents speak to whether it had actual knowledge of the dangerous condition that allegedly existed that night (i.e., whether the subject pallet constituted a dangerous condition). Def.'s Reply [201] at 2. But the proof of other accidents might also speak to whether Walmart—armed with the knowledge of prior accidents— acted reasonably in the way it stacked and/or tested the pallet that night. In other words, the evidence might speak to whether Walmart unreasonably created a dangerous condition. "When the dangerous condition was created by the negligence of the business owner or someone under

---

[1] The Court questions whether this is a substantive issue as opposed to an evidentiary issue governed by the Federal Rules of Evidence. Regardless, the result remains the same.

his authority, no proof of the owner's knowledge of the condition is necessary." *Bonner v. Imperial Palace of Miss., LLC*, 117 So. 3d 678, 687 (Miss. Ct. App. 2013).

Third, Walmart contends that none of the incidents are relevant because Walmart does not dispute that improperly stacked boxes could fall. *See* Def.'s Reply [201] at 1. For starters, the advisory committee's note to Rule 401 states:

> The fact to which the evidence is directed need not be in dispute. While situations will arise which call for the exclusion of evidence offered to prove a point conceded by the opponent, the ruling should be made on the basis of such considerations as waste of time and undue prejudice (see Rule 403), rather than under any general requirement that evidence is admissible only if directed to matters in dispute.

Moreover, "except in rare circumstances, a party's stipulation cannot render evidence irrelevant, for the plaintiff is entitled to prove 'its case free from any defendant's option to stipulate the evidence away.'" *Grandoe Corp. v. Gander Mtn. Co.*, 761 F.3d 876, 889 (8th Cir. 2014) (citations omitted) (quoting *Old Chief v. United States*, 519 U.S. 172, 189 (1997)).

Fourth, Walmart says any incident occurring more than one year before Moody's incident is too remote in time. Def.'s Reply [201] at 3. According to Walmart, the Mississippi Supreme Court "has found a one-year limitation is reasonable." *Id.* (citing *Bonner*, 117 So. 3d at 687–88; *Irby v. Travis*, 935 So. 2d 884, 895 (Miss. 2006); *Barrett v. Parker*, 757 So. 2d 182, 188 (Miss. 2000)). While Mississippi courts have held that trial courts acted reasonably in setting a one-year window, that does not mean this Court must set that same arbitrary limitation on the evidence. *Cf. Irby*, 925 So. 2d at 894 (citing *S.H. Kress & Co. v. Markline*, 77 So. 858, 864 (1918) (examining evidence over a two-year period)). Here, two of the incidents occurred within the one-year window or slightly beyond it. The other two are more remote and have additional issues.

4

Though the Court rejects Walmart's threshold arguments and elects to specifically

consider the evidence, it does recognize, under Rule 403, that the more remote and less similar

the events are, and the more of them Moody offers, the greater the risk of delay, confusion, and

unfair prejudice.

Turning to the similarities between this case and the other incidents, Moody was

shopping when a Walmart employee, Tony Ortega, pulled a loaded pallet past her in the aisle;

boxes allegedly fell from the pallet, and some allegedly fell on Moody.  Four other falling-object

incidents occurred at Walmart stores in Mississippi that Moody wishes to offer:

- Claim No. L4205957:  This incident involved a box that allegedly fell from a pallet and struck a customer when the Walmart employee cut the plastic wrap off the merchandise. Here, there is no suggestion the boxes were wrapped.  That and the age of the incident are enough to exclude it under Federal Rules of Evidence 401 through 403.

- Claim No. L4094958:  A witness described this incident as follows:  "We were walking to get paper towels and there was a cart that we had to pass by, and when we passed by it just started falling."  As Walmart notes, there are factual differences between the two incidents, and Claim No. L4094958 occurred over two years before Moody's incident. Moreover, because the Court denies Walmart's motion as to the next two claims, offering Claim No. L4094958 becomes less necessary and violates Rule 403.  The motion is granted as to this claim.

- Claim No. L5131488:  Walmart employees were apparently pulling a cart "piled high with boxes," and, when they turned a corner, boxes fell and struck a customer.  Walmart argues that the incident should be excluded because it occurred more than one year before Moody's incident.  True, but it was barely over that threshold, occurring less than 13 months earlier.  And while the incidents are not identical, they are substantially similar, in that they both involve stacked merchandise that fell while being moved through the store.  This incident is similar enough to avoid exclusion in limine.

- Claim No. L5149097:  According to a report, "lots of boxes" fell off an L-cart causing bodily injury.  A Walmart employee testified that the only reason an L-cart would be out is "typically we're stocking or either we're transporting boxes to the back or we're assisting a customer with a carryout."  Walmart says the incident is "arguably subject to the one[-]year limitation."  Def.'s Reply [201] at 9.  But Claim No. L5149097 occurred September 5, 2015, whereas Moody's incident occurred on September 3, 2016.  Walmart also shows that the incidents are not identical, but they are similar enough to be probative.  The motion is denied as to this incident.

As a final note, the other-acts evidence will require a contemporaneous instruction tracking Rule 404(b) and explaining the limited purposes for which the jury may consider it. The parties are instructed to prepare a joint proposed instruction; if that is not possible, they shall submit separate instructions for consideration.

B.      Moody's Motion in Limine

Moody seeks to exclude two categories of evidence, both of which are disputed:  (1) evidence that she was trying to "build a case" against Walmart and (2) evidence concerning marijuana use or positive THC tests.

1.      Building a Case

The medical records from Anderson Regional Medical Center include a report for an "office visit" stating that Moody "present[ed] for recheck on back pain."  Record [187-1] at 1. Under the heading "History of Present Illness," the record states:  "She is literally 'building a case for her back pain from the injury while at Wal-Mart.'"  *Id.*

Moody contends that this evidence must be excluded as unexcepted hearsay within hearsay.  *See* Fed. R. Evid. 805.  At the first hearsay level, Moody says the statement was not made for medical purposes, so Rule 803(4) does not exempt it from the rule against hearsay. That may be true, but no exception is necessary because the statement is not hearsay to begin with.  Moody acknowledges in her memorandum that the statement "[p]resumably reflects something [she] said to her doctor about her injury."  Pl.'s Mot. [187] at 4.  And in her deposition, Moody never denied saying she was "building a case," stating instead that she does not remember making that statement but that the doctor would not make it up.  Moody Dep. [195-1] at 162–63.  The medical record itself reflects that it records a conversation with

"Hannah," and the building-a-case statement is in quotation marks.  Record [187-1] at 1.

Moody's own statements offered against her at trial are not hearsay.  Fed. R. Evid. 802(d)(2)(A).

As to the second level of purported hearsay, Moody argues that the medical record does

not fall under the business-record exception to the rule against hearsay.  *See* Fed. R. Evid.

803(6).  To support that argument, Moody cites a Mississippi case holding that a doctor's letter

to an attorney is not a business record.  *Jones v. Hatchett*, 504 So. 2d 198, 202 (Miss. 1987).

Moody says the Anderson medical record is the same because the building-a-case statement was

not part of the doctor's routine business and was "obviously done in anticipation of litigation."

Pl.'s Mem. [187] at 4.  But there is a significant difference between a medical record

documenting a patient visit and a letter to an attorney.  Regardless, documenting a statement like

that would have a medical purpose because doctors make medical judgments based in part on

what their patients tell them.  Finally, under Federal Rule of Evidence 803(6), medical records

can constitute business records, and Moody's arguments fail to show why this one is different.

*See, e.g.*, *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991).

Moody finally argues that admitting the evidence would be irrelevant under Rules 401

and 402 and prejudicial under Rule 403.  Specifically, she says, "The issues to be determined in

this case center around the Defendants' negligence, and the allegation that Plaintiff was 'building

a case' has no bearing on these issues."  Pl.'s Mem. [187] at 4–5.  But whether Walmart

breached its duty of care is not the only issue; the jury must also consider causation and

damages.  The building-a-case statement is squarely relevant to those questions, and its probative

value is not substantially outweighed by any Rule 403 concern.  The statement will not be

excluded in limine.

2.        Marijuana Use and Positive Drug Tests

On December 17, 2018, Moody was seen by Dr. Michael Shrock for back pain, and the medical record notes that Plaintiff "is currently breastfeeding.  For this reason, *and that she is positive for THC*, we will not prescribe narcotics."  Record [187-2].  Moody hopes to exclude this record from the evidence along with any other reference to marijuana use.

During the pretrial conference, Moody's counsel asked the Court to consider *Accu-Fab & Construction, Inc. v. Ladner*, where a trial court excluded a positive marijuana test from evidence. 778 So. 2d 766, 767 (Miss. 2001), *overruled on other grounds by Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107 (Miss. 2003).  Ladner was "working on the roof of a casino barge when he fell through a hole in the roof and later died from his injuries."  *Id.* at 766.  The Mississippi Supreme Court concluded that the trial court did not abuse its discretion by excluding the test results because there was no evidence of impairment.  *Id.* at 767.  The last witness to see Ladner testified that he was not impaired, and there was no evidence that the levels reflected in the blood test would cause impairment.  *Id.*

A different result occurred in *Abrams v. Marlin Firearms Co.*, where the plaintiff apparently shot himself while spotlighting deer and sued the gun manufacturer.  838 So. 2d 975, 980 (Miss. 2003).  A witness found empty and full beer bottles in Abrams' car and testified that he smelled alcohol on his breath.  *Id.* at 977, 979.  After losing at trial, Abrams argued on appeal "that the trial court erred in admitting evidence of his possible alcohol consumption."  *Id.* at 979. The Mississippi Supreme Court affirmed, noting that there was "proof of alcohol use" and that "evidence of possible alcohol consumption just prior to the accident was highly relevant and probative as to Abrams' credibility, his recollection of the accident since there were no other

8

witnesses, and his contributory negligence." *Id.* at 980 (distinguishing *Accu-Fab*, 778 So. 2d at 772).

This case is more like *Abrams*. When asked if she smoked marijuana "before the incident at Wal-Mart," Moody eventually said, "Yeah." Moody Dep. [195-1] at 76. And other evidence circumstantially suggests she was impaired at the time of the incident: (1) she was at the store near midnight for cookie dough; (2) she stood staring at the cookie dough for five to six minutes before the accident; and (3) she cannot recall many of the relevant details. *See* Moody Dep. [156-3] at 197–99; 204–05. There is at least a jury question whether she was impaired. If so, it would speak directly to her credibility as a witness to the disputed events and whether she contributed to cause them. Her use of marijuana is highly probative and not so unfairly prejudicial to preclude its admission under Rule 403.

Dr. Shrock's records are a different matter. If Moody's marijuana use altered her proper course of medical treatment, then it would be probative of her damages and mitigation. *See* Def.'s Ans. [8] ¶ 9 (asserting failure to mitigate alleged damages). But the complete statement in the record indicates that Moody was smoking marijuana while breastfeeding. That added information is not probative of any issue in this case and could instead suggest that she is a bad mother. The threat of unfair prejudice substantially outweighs the probative value of the information. For now, the Court grants the motion in limine as to the statement in Dr. Shrock's record. The Court does not rule out the possibility that the marijuana use might become admissible as it relates to treatment, but, when coupled with breastfeeding, it violates Rule 403.

III.    Wal-Mart's *Daubert* Motion

Walmart filed a collective *Daubert* motion seeking to exclude opinions from four experts Moody designated as witnesses. On October 27, 2021, the Court granted that motion in part but

otherwise denied it.  The Court also reserved judgment on Opinion No. 1 from Traci Campbell,

an engineer Moody retained to address the kinematics of the accident.  *See* Order [183].  On

February 18, 2022, the Court conducted an evidentiary hearing, during which Campbell testified.

This order examines the sole remaining opinion subject to Walmart's motion based on

Campbell's testimony and the rest of the *Daubert* record.

        A.        Standard

Federal Rule of Evidence 702 states that a qualified expert witness may offer opinions if

"the testimony is based upon sufficient facts or data; [] the testimony is the product of reliable

principles and methods; and [] the witness has applied the principles and methods reliably to the

facts of the case."  Campbell's qualifications are not disputed, and the Court finds that the

remaining opinion is relevant.

So, the question is whether the opinion is reliable.  *See Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, (1993).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the

testimony is scientifically valid.'"  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th

Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93).  Thus,

> [t]he subject of an expert's testimony must be 'scientific . . . knowledge.'"
> [*Daubert*] at 589–90, 113 S. Ct. 2786 (notation omitted).  The testimony must be
> "ground[ed] in the methods and procedures of science" and "more than subjective
> belief or unsupported speculation."  *Id.* at 590, 113 S. Ct. 2786.  This is not to say
> it "must be 'known' to a certainty; arguably, there are no certainties in science."
> *Id.* (citation omitted).  "[I]n order to qualify as 'scientific knowledge,' an
> inference or assertion must be derived by the scientific method."  *Id.*

*Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

Notably, "the district court must act as a gatekeeper to exclude all irrelevant and

unreliable expert testimony, [but] 'the rejection of expert testimony is the exception rather than

the rule.'"  *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).  "Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof

are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*,

509 U.S. at 596.

    B.    Analysis

    The disputed opinion states:  **"Based upon the pedestrian kinematic analysis**

**conducted, Ms. Moody was contacted by an outside force (versus something she initiated)**

**causing her to experience a counter clockwise twisting motion that ultimately led to her**

**landing on her backside in the lower level of the refrigerated cooler."**  Campbell Report

[151-7] at 21 (emphasis added).  Related to that, Campbell opined:  "It is possible that if Ms.

Moody was looking at or reaching for an item that was located below her waist level, her

backside may have been extended into the aisleway more than her foot position." *Id.* at 17–18

(citing "[G]raphic [I]llustration Number 5").  Graphic Illustration Number 5 shows the

following:



*Id.* at 8; *see also id.* at 17–18 (citing Graphic Illustration Number 5 as support for opinion that "it is possible" Moody was stooping while reaching).

If Campbell intended to discuss this graphic and opine that Moody was possibly stooping when struck, then the opinion has always been too speculative. *See Bruner v. Cemex, Inc.*, No. 1:08-CV-1386-LG-RHW, 2010 WL 10567332, at *2 (S.D. Miss. Aug. 27, 2010) (rejecting speculative opinion that "unevenly adjusted brakes could have caused" the accident) (collecting cases). That is even more apparent now. During the *Daubert* hearing, Campbell explained that her stooping observation was based on Graphic Illustration Number 5 but that counsel provided that illustration. Campbell did not appear to know the basis for the graphic, and Moody herself has never said she was stooping; she testified that she could not remember. Moody Dep. [156-3] at 197–98. Indeed, Campbell acknowledged that Moody's recorded incident report and testimony do not lend credence to the graphic. Campbell also explained during the hearing that whether Moody was standing or stooping had no impact on her scientific analysis, suggesting that the theory has not been tested. In short, Campbell may not testify that it was "possible" Moody was stooping and reaching for her selection when struck because the testimony is speculative and unreliable.

After moving past that issue, the parties appeared to focus on whether Campbell can say Moody was more likely facing the cookie dough display when bumped from behind and was not turning toward, or backing into, the passing pallet. Campbell's initial opinion seemed to flow from her conclusion that Moody was leaning toward the cookie dough reaching for her selection when struck; she explained how Moody's stabilizing muscles would have reacted to the contact from the pallet. After a discussion of the available evidence, Campbell appeared to abandon the reaching part of her opinion and maintained that even if Moody was not reaching, it is still less

likely that she stepped back into the pallet or turned in its direction.  When asked why, Campbell stated that, had Moody been moving toward the pallet, her momentum would have more likely than not caused her to fall to the floor, or, perhaps, end up seated further down the aisle than where she landed.

That may be, but how can Campbell rely on Moody's momentum without knowing her mass and velocity?  Campbell mentions no such measurements for Moody or the pallet.  She also said that her kinematics analysis ultimately includes some reliance on kinetics and the force that may have been applied to an object.  But she relied on no data (e.g., mass/acceleration) or formulas to determine how the two colliding bodies would have reacted.[2]

She also acknowledged that Moody could have moved backwards and ended up in the same resting position if she was closer to the display, but Campbell does not know how close Moody was at contact.  As for Moody's ending position, Campbell notes that Moody was looking at cookie dough and ended up seated in that section (suggesting a 180-degree pivot).  If Moody was moving backwards when struck, she would have come to rest further down the aisle.  But Campbell never took any measurements and testified that she did not know the width of the cookie-dough section.  Campbell ultimately agreed that, from a scientific standpoint, it is possible Moody could have moved toward the pallet and still ended up where she did, but Campbell believes, based on other contextual evidence, it is more likely she was facing the cooler when struck.

The problem is that Campbell never tested that opinion.  One of the non-exclusive reliability considerations under *Daubert* is whether "the theory or technique has been tested."

---

[2] Campbell testified that no formulas are necessary, citing Newton's laws, but if not, she still needs to articulate how she arrived at her conclusions in some scientific way that goes beyond her own say so.

509 U.S. at 593–94.  Campbell says she tested her theory that Moody was struck and rotated 180

degrees into the seated position by eliminating other possibilities, like whether Moody moved

toward the pallet.  But what is still missing is any data, tests, or scientific basis for rejecting those

other possibilities.  Indeed, Campbell herself never scientifically tested her conclusions through

data-generated methods, and it is not apparent how anyone else could test her conclusions based

on what she has offered.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A

court may conclude that there is simply too great an analytical gap between the data and the

opinion proffered."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Atl.

Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850, 855 (5th Cir. 2018) (affirming exclusion of

expert opinions where expert theory "seem[ed] possible" but lacked data and had not been

tested).  Here, it is possible Campbell had a scientific basis for her opinion, but the Court set an

evidentiary hearing to give her an opportunity to better explain it.  Having heard the testimony,

the Court finds it lacking under Rule 702.  Walmart's motion is granted as to Opinion No. 1.

IV.    Conclusion

As explained above, the remaining portion of Walmart's *Daubert* motion [151] is granted.

The two motions in limine [185, 187] are granted in part but otherwise denied.

**SO ORDERED AND ADJUDGED** this the 28th day of February, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE